<u>DECLARATION</u>

I, Brendan Cullen, being duly sworn, depose and state as follows:

1.       I am a Special Agent with the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI").  I have been employed by HSI and its predecessor, the United States Customs Service since January 2003.  I am currently assigned to HSI Providence.  I have investigated and assisted other agents in investigating numerous cases involving a variety of criminal violations including fraud, money laundering, narcotics trafficking, illegal importation and exportation of goods, and intellectual property theft.  I have received on-the-job training and have participated in DHS-sponsored training courses on these types of investigations.  My investigations and training have included the use of surveillance techniques and the execution of search, seizure, and arrest warrants.

2.       The information contained in this Declaration is based on witness interviews, conversations with investigators and agents of HSI and other agencies involved in this investigation, my personal knowledge, and observations during the course of this investigation, my personal training and experience as a criminal investigator, and the review of records, documents and other evidence obtained during this investigation.

3.       This Declaration is submitted in support of the Verified Complaint for Forfeiture In Rem against the following:  One lot of $675,372.65 in U.S. Currency seized from Bank of America Account # 3750 2279 2092 (the "Defendant Property").

4.       I do not set forth all information known to law enforcement about this matter, as the purpose of this Declaration is to set forth only cause sufficient to support initiation of a civil forfeiture action.

1

5.      As described below, there is probable cause to believe that the Defendant

Property is proceeds of bank and wire fraud as well the conspiracy to commit those offenses, in

violation of 18 U.S.C. §§ 1343, 1344 and 1349.  As such, the Defendant Property is subject to

forfeiture under 18 U.S.C. § 981(a)(1)(C).  There is also probable cause to believe that the

Defendant Property was involved in money laundering activity, in violation of 18 U.S.C.

§§ 1956 and 1957.  As such, the Defendant Property is also subject to forfeiture under 18 U.S.C.

§ 981(a)(1)(A).

<u>BACKGROUND</u>

6.      The Defendant Property included in this Declaration was in a bank account

opened in violation of bank policies established at Bank of America.  More specifically, Dean

YANUSHOK, Guy David SHANTSER and Idan HADAR, all Israeli nationals, conspired to

open this bank account with Defendant Property using fraud and deceptive practices to

circumvent Bank of America compliance measures.   Through conversations with Bank of

America personnel and reviewing Bank of America's website, I have learned that Bank of

America requires the following from potential customers who are not U.S. Citizens or lawful

permanent residents applying to open bank accounts:

    a.   Applicant must visit a Bank of America financial center/branch in person.
    b.   Applicant must be living in the United States.
    c.   Applicant must be able to provide their physical address in the United States as well as their home/permanent address abroad.
    d.   Applicant must provide two forms of valid identification such as a foreign passport and driver's license.

7.      These "Know Your Customer" ("KYC") requirements are not unique to Bank of

America.  As detailed more fully in this Declaration, SHANTSER and others also violated

similar compliance procedures at Citizens Bank, a financial institution headquartered in the

District of Rhode Island.  KYC requirements have become more uniform with U.S. financial institutions following the 2001 passage of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism ("USA PATRIOT") Act.  Title III of the USA PATRIOT Act specifically addressed international money laundering abatement to make it more difficult for illicit actors to exploit U.S. financial institutions for money laundering and terrorist financing.  Section 326 of the USA PATRIOT Act pertains to verification of identification of account holders.  Under this section, the USA PATRIOT Act outlines the minimum requirements for financial institutions to verify the identity of a person seeking to open an account, maintain identity records and consult lists for suspected terrorists or terrorist organizations to ensure the applicant is not on these prohibited lists.

8.      As described more fully herein, the scheme devised by YANUSHOK, SHANTSER, HADAR and others to open accounts at Bank of America to move millions of dollars through the Defendant Property was designed to circumvent these compliance measures put in place by Bank of America and envisioned by the USA PATRIOT Act.

<u>STATUTORY FRAMEWORK</u>

9.      Title 18, United States Code, Section 1344.  The bank fraud statue, 18 U.S.C. § 1344, makes it a federal crime for anyone who knowingly executes a scheme in order to defraud a Federally chartered or insured financial institution or to obtain any of the monies, funds, credits, assets, securities, or other property owned by, or under the control of, such an institution by means of false or fraudulent pretenses, representations, or promises.

10.      Title 18, United States Code, Section 1343.  The wire fraud statute, 18 U.S.C. § 1343, makes it a federal crime for anyone, having devised or intending to devise any scheme and artifice to defraud by means of false or fraudulent pretenses, representations, or promises, to

transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.  As is applicable in this matter, if the violation occurs in relation to, or involving any benefit authorized, transmitted, transferred, disbursed, or paid in connection with a presidentially declared major disaster or emergency, or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

11.     Title 18, United States Code, Section 1349. Title 18 U.S.C. § 1349 makes it illegal to conspire to commit a violation of 18 U.S.C. § 1343.

12.     Title 18, United States Code, Sections 1956 and 1957. Title 18 U.S.C. §§ 1956 and 1957 criminalize various activities that constitute money laundering.  These activities include but are not limited to conducting financial transactions with knowledge that the proceeds involved in the financial transaction are proceeds from a "specified unlawful activity" and with the intent to "promote the carrying on of a specified unlawful activity," *see* 18 U.S.C. § 1956(a)(1)(A); or knowing that the transaction is designed in whole or in part to "conceal or disguise the nature, the location the source, the ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law." *See* 18 U.S.C. § 1956(a)(1)(B)(i) & (ii).  Additionally, it is a crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity.  *See* 18 U.S.C. § 1957.

13.     Under Title 18, United States Code, Section 1956, a "financial transaction" includes a transaction which affects interstate or foreign commerce and involves the movement of funds by wire or other means.  Furthermore, a "monetary transaction" includes the transfer or

4

exchange in or affecting interstate or foreign commerce of funds by through or to a financial institution (which include money service businesses as defined by FinCEN). "Specified unlawful activities" include violations of the Controlled Substances Act (Title 21 United States Code) and 18 U.S.C. §§ 1343 and 1344. *See* 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B).

14.     Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1). Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Sections 1956 and 1957, and any property traceable to such property. Similarly, Title 18, United States Code, Section 982(a)(1) provides for the criminal forfeiture of any property, real or personal, involved in an offense in violation of Title 18, United States Code, Sections 1956 and1957, and any property traceable to such property.

15.     Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). Title 18 U.S.C. § 981(a)(1)(C) provides for civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense. As set forth above, specified unlawful activity includes violations of 18 U.S.C. § 1343. *See* 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). Title 28 U.S.C. § 2461(c) provides for criminal forfeiture when civil forfeiture is authorized.

16.     Title 18, United States Code, Section 984. Title 18 U.S.C. § 984 provides that in any forfeiture action in rem any identical property found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section. No action pursuant to this section to forfeit property not traceable directly to the offense

that is the basis for the forfeiture may be commenced more than one year from the date of the offense.

17.     Based on my training, experience, and the information contained in this Declaration, there is probable cause to believe that the Defendant Property is subject to civil forfeiture as property involved in a money laundering offense and as property that constitutes or is derived from proceeds traceable to wire fraud, conspiracy to commit wire fraud, and the operation of an unlawful money services business, all pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), and 984, and Title 28, United States Code, Section 2461(c), and are therefore subject to forfeiture.

<u>FACTS SUPPORTING PROBABLE CAUSE</u>

18.     As part of this investigation, I submitted a prior affidavit in the Eastern District of Pennsylvania (*See 22-MJ-419*) that supported a seizure warrant for a cryptocurrency account held at the U.S.-based cryptocurrency exchange Kraken.  I also submitted five separate affidavits in the Eastern District of Pennsylvania (*See MJ-21-1572, MJ-21-1809, MJ-22-1188, MJ-22-1389, and MJ-22-1428*) for search warrants of 15 e-mail accounts and one social media account used by subjects of this investigation.  Based in part on the evidence obtained during some of those searches, I submit this Declaration in support of forfeiture of the Defendant Property.

19.     This investigation has uncovered a systematic and highly developed phone call impersonation scam that deceives victims into believing that they are talking to law enforcement, regulatory agencies or support personnel affiliated with commercial entities such as financial institutions or electronic commerce companies.  These scams use various deception techniques to defraud victims into believing that they are the subjects of law enforcement investigations, tax audits, hacking incidents, or are otherwise delinquent in fulfilling some obligation for which they

are subject to penalties, arrest or further financial exposure/loss. After establishing this fear, the fraudsters then dupe victims into believing that the only way out of their predicament is to make payments or transfer funds out of their accounts. These payments/fund transfers are often done using peer-to-peer and cryptocurrency transfers.

20.    The accumulation of large amounts of fraud proceeds derived from these phone call fraud schemes has caused the perpetrators to employ various methods of collecting, transferring, and laundering these funds. One such method used is the recruitment of third-party money launderers to fulfill roles needed to facilitate the movement of proceeds through financial institutions.

21.    As set forth in further detail below, from approximately December 1, 2019, to the present, M.S., Milton Glenn OWENS-CRAWFORD, Dean YANUSHOK, Guy David SHANTSER, Idan HADAR, Geoffrey KAPLAN and others have used fraud to open Bank of America accounts for the purpose of receiving and sending funds derived from phone call impersonation and other financial fraud schemes. KAPLAN and OWENS-CRAWFORD reside in the United States and played an essential role in this scheme to use their positions as a bank employee and real estate agent to open accounts for foreign nationals residing outside of the United States at U.S.-based financial institutions. As described in more detail later in this Declaration, KAPLAN and OWENS-CRAWFORD conspired to open more than 100 individual Bank of America accounts, some of which were used to receive funds believed to or known to have been derived from fraud. Much of these funds were moved through these Bank of America accounts and ultimately transferred to accounts held outside of the United States. Based on my investigation described herein, I believe that a portion of these funds were derived directly from phone call, romance, tech support and other financial scams. Furthermore, I believe that in the

case of the Defendant Property, KAPLAN, OWENS-CRAWFORD, YANUSHOK, SHANTSER

and HADAR used bank fraud to open the account in violation of Title 18 U.S.C. § 1344 and

transfer these funds to accounts mainly held outside of the United States in violation of Title 18

U.S.C §§ 1343, 1349, 1956 and 1957.

22.     In conducting this activity, OWENS-CRAWFORD, YANUSHOK, SHANTSER

and HADAR are illegally facilitating the movement of fraudulently obtained funds and profiting

from this activity.

23.     I have traced proceeds from this activity to certain accounts described herein.

<u>The Investigation</u>

24.     On or about June 22, 2021, members of the Ontario Provincial Police ("OPP")

contacted me regarding an investigation that they were conducting into a phone call extortion

scam targeting victims into believing that they are the subject of criminal investigations.  The

OPP investigation was initiated in March of 2020, when a woman in Grenville County, Ontario

was extorted out of approximately $72,050 Canadian Dollars ("CAD") by unknown individuals

purporting themselves to be members of the Toronto Police Service ("TPS") Fraud

Department.  This scheme mainly involved the victim communicating via telephone with

individuals identifying themselves as detectives with TPS who were investigating a case where

individuals were attempting to illegally use the victim's identity.  The fraudster convinced the

victim that she would have to empty her bank accounts and send her money to them so they

could keep it safe while the TPS investigated the alleged compromise of her identity.

25.     As a result of this scam, the Grenville County victim sent over $72,000 CAD of

her money to unknown individuals by depositing the funds into BTC Automated Teller

Machines (hereinafter referred to as BTMs).  Through their investigation, OPP was able to obtain

BTM receipts for most of Victim 1's transactions. Using the data from these transactions, OPP conducted blockchain tracing analysis that revealed that Victim 1's funds was consolidated at several cryptocurrency addresses.

26.    OPP continued to expand their investigation and uncovered numerous investigations in other Canadian jurisdictions with similar patterns of fraud. OPP was able to trace funds sent from Victim 1 as well as other Canadian fraud victims to a group of cryptocurrency addresses controlled by the exchange[1] Binance. One of these addresses that received large sums of cryptocurrency derived from fraud at Binance was an address ending in qYEb. OPP served legal process on Binance for the user associated with this cryptocurrency address. In February of 2021, Binance responded that the account belongs to M.S., and provided a photo identification of M.S. A review of M.S.'s Binance account reveals millions of dollars in cryptocurrency deposits, some of which were traced to fraud schemes as described more fully in the previous affidavits associated with this investigation.

27.    As previously stated, as part of this investigation, I submitted four prior affidavits in the Eastern District of Pennsylvania that supported search warrants for fifteen e-mails accounts (Target E-mail Accounts 1-15). I have since reviewed these e-mails and discovered that M.S. and others have set up numerous cryptocurrency accounts that have been used to facilitate money laundering operations. Furthermore, these e-mails reveal that M.S. has set up or assisted in setting up at least 100 shell companies that appear to only exist on paper and incorporated mainly in the jurisdictions of the United Arab Emirates (UAE), Singapore, Malaysia, Hong Kong, and India. Based on M.S's e-mails, it appears that these companies are

---

[1] Individuals can acquire cryptocurrencies like Bitcoin through exchanges (i.e., websites that allow individuals to purchase or sell cryptocurrencies in exchange for fiat currency or other cryptocurrencies), ATMs, or directly from other people.

set up for the purpose of moving millions of dollars through related bank and cryptocurrency accounts. E-mails reveal that M.S. created fraudulent invoicing to give the appearance of legitimacy to the movement of millions of dollars in funds believed to have been derived from fraud.

28.     Based on the facts learned from the review of the target Gmail accounts, I believe that these shell companies conduct very little to no legitimate business activity and are set up for the sole purpose of laundering proceeds earned from fraud.

<u>The Bank of America Scheme</u>

43.     While reviewing the results of a search of one of M.S's e-mail accounts, I observed that on December 1, 2019, M.S. received an e-mail from the e-mail address zanderanttravels@gmail.com titled "Fwd: company document of TRAVEL CONSULTANTS LLC". This e-mail contained no written message but did contain several attachments.

44.     The first attachment is a Bank of America account opening letter in the name of a business called Z.T. LLC. This document appeared to have been signed by M.S., who was listed as the "Business signer" for Z.T., LLC, a "TRAVEL CONSULTANTS" business. The mailing address of Z.T., LLC was listed as 19785 W 12 Mile Rd., #353, Southfield, MI 48076. The account opening document lists a physical address for this business as a residential address in Detroit, Michigan and a second address in India. This account was opened with a $100 deposit from the Bank of America account ending in 8414 in the name of OMEGA GLOBAL INVESTMENTS LLC, (hereinafter referred to as the OMEGA GLOBAL account). Bank of America records show that this OMEGA GLOBAL INVESTMENTS LLC account was opened by YANUSHOK. I will not be seeking a seizure warrant for the OMEGA GLOBAL account as the funds for this account were depleted by YANUSHOK prior to Bank of America closing the

account.  However, the OMEGA GLOBAL account plays a prominent role in this scheme, as YANUSHOK used this account to fund numerous accounts opened at Bank of America in violation of Bank of America policies and in furtherance of bank fraud.  Therefore, the OMEGA GLOBAL account, held by YANUSHOK, will be referenced herein.

45.    A second document attached to this e-mail is a letter from the Internal Revenue Service (IRS) dated December 26, 2018, documenting the assignment of an Employer Identification Number (EIN) for Z.T. LLC,  and lists "OMEGA REAL ESTATE LLC SOLE MBR" at 19785 W 12 Mile Rd, PO Box 353, Southfield, MI 48076.

46.    The third document attached to this e-mail is from the Michigan Department of Licensing and Regulatory Affairs listing Z.T., LLC as a Domestic Limited Liability Company.  This document lists the same address in Southfield, MI and lists the company's agent as Milton OWENS-CRAWFORD.  This document also lists M.S.[2] as the company's "SOLE MEMBER".

47.    Based on this information, I issued a subpoena to Bank of America for the account linked to Z.T., LLC.  A review of activity for this account shows over $6 million in wire transfers passing through the account from January 2019 through March of 2020.  The majority of these transfers are to and from other shell companies known to have been created by M.S. for the purpose of moving large amounts of funds believed to have been derived from phone call fraud.  Although M.S. described Z.T., LLC as a travel consultancy business when opening this account with Bank of America, many of the wire transfers to M.S.'s other known businesses do not match the business purpose of travel and tourism.  For example, this Bank of America account sent multiple wires to B.D.L. of Malaysia, totaling more than $1 million dollars.  I know

---

[2] M.S.'s name appeared backwards in this document.

from reading other e-mails associated with M.S.'s accounts, that he set up B.D.L. in Malaysia

and claimed to a financial institution that this company is engaged in the business of buying and

selling scrap metal and other goods.

48.     I am aware that M.S. regularly created shell companies with corresponding bank

accounts to move funds derived from fraud.  I am also aware from reading thousands of e-mails

sent and received by M.S. that he also created what appeared to be fictious invoices and shipping

documents associated with these shell companies.  M.S. then shared these fictious documents

with bank compliance officers to account for the millions of dollars in suspected fraud proceeds

moving through his accounts.  In at least one instance, I observed M.S. create what appears to be

a fictitious invoice for Z.T., LLC.  This invoice listed a bill of $25,696 from Z.T., LLC to a

business named V.T.&T., PVT LTD of India.  This invoice appeared to charge V.T.&T. for an

organized group tour of Washington, D.C.  The invoice listed the Bank of America account for

Z.T., LLC.  I believe that this invoice is fictitious because I am aware from my own records

checks that M.S. has never been to the United States, resides in Dubai and does not work in the

travel and tourism industry.  Furthermore, M.S.'s e-mails reveal that V.T.&T. is another shell

company created by M.S.

<u>Discovery of Target Account 1</u>

49.     A review of M.S.'s e-mails reveals that he used the same Michigan address of

19785 W 12 Mile Rd, PO Box 353, Southfield, MI 48076 for at least two known shell

companies: Z.T., LLC and F.T.&T., LLC[3].  Documents for both companies listed "OMEGA

REAL ESTATE LLC SOLE MBR".  Having identified two shell companies using the same

---

[3] With the assistance of OWENS-CRAWFORD, M.S. established a second business account at Bank of
America for the shell company F.T.&T, LLC.  This account and business were also set up by OWENS-
CRAWFORD in Michigan linked to OMEGA REAL ESTATE LLC.  Bank of America records reveal that, after the
account opening, this account has no associated activity.

Michigan address associated with M.S. and his money laundering organization, I further investigated this address and discovered that 19785 W 12 Mile Rd, Southfield, MI 48076 is a UPS Store.  Based on this information, I issued a subpoena to obtain more information about the user of mailbox 353 at this UPS Store.  According to records provided to me by the UPS Store, "PMB #353" was rented on November 13, 2017, by Milton Glenn OWENS-CRAWFORD of 24555 Florence St., Detroit, MI 48219.  OWENS-CRAWFORD also provided a copy of his Michigan identification card and real estate license, listing his employer at that time as REACH REALTY GROUP LLC.  On OWENS-CRAWFORD's "Application for Delivery of Mail Through Agent" (PS Form 1583[4]), he provided an address of 17200 W 10 Mile Road, Ste 201, Southfield, MI.  OWENS-CRAWFORD also listed his business as "OMEGA REAL ESTATE" (the same company name listed on both of M.S.'s shell company corporation filings in Michigan) and listed a business officer for his company as "Dean Yanushok".  As previously stated, YANUSHOK is a subject of this investigation and a citizen of Israel.

50.    I continued to investigate the UPS store mailbox used by OWENS-CRAWFORD and discovered several financial fraud complaints, where victims filed reports that included this address and mailbox.  For example, while reviewing of the Federal Bureau of Investigation (FBI) Internet Crimes Complaint Center (IC3) I discovered that in August of 2019, a fraud victim from California filed a complaint after losing over $90,000 during a romance fraud scheme.  In this case, the victim was given several bank accounts and addresses where to send money, including a Bank of America account (ending in 2452) associated with "AGT Inter LLC" of 19785 W 12 Mile Road, PO Box 353 Southfield, MI 48076, OWENS-CRAWFORD's mailbox.  During that same month, another fraud victim from Illinois reported losing $85,000 during a romance fraud

---

[4] PS Form 1583 is a United States Postal Service form.

13

scheme, where he was duped into wiring funds to this same Bank of America account to the attention of "AGT International LLC". In June of 2019, a third romance fraud victim from Virginia also reported losing $3,500 that she sent to this same account. According to Michigan Corporations Division, in October of 2018, OWENS-CRAWFORD registered AGT INTERNATIONAL LLC using this same UPS mailbox as the company's address. I then checked transfers from YANUSHOK's OMEGA GLOBAL account at Bank of America and observed that on October 29, 2018, he transferred $100 to this account ending in 2452.

51.     Another complaint filed with IC3 in July of 2019 by a financial fraud victim from Florida reveals that this victim was duped into partnering with an individual he met online to purchase gold bars from Dubai. In this case, the victim reported losing over $67,000 from this scheme and was instructed by the scammer to send his funds to multiple different business accounts. One such account was a Bank of America account (ending in 0867) in the name of MVMX OFFSHORE SERVICES, LLC located at 19785 W 12 Mile Road, PO Box 353, Southfield, MI 48076, OWENS-CRAWFORD's mailbox. A review of the Michigan Corporations Division website reveals that OWENS-CRAWFORD registered this business in December of 2018, using this same UPS mailbox as the company's address. I then checked transfers from YANUSHOK's OMEGA GLOBAL account at Bank of America and observed that on December 18, 2018, he transferred $100 to this account used for fraud ending in 0867.

52.     I then submitted an additional request to Bank of America for accounts associated with OWENS-CRAWFORD, YANUSHOK and others. As part of my inquiry, I spoke with Bank of America Internal Enterprise Investigations Senior Vice President and Internal Investigator, Deborah Salomon. Investigator Salomon informed me that OWENS-CRAWFORD and YANUSHOK were associated with an internal investigation of former Bank of America

Manager Geoffrey KAPLAN.   KAPLAN was the Manager at a Bank of America branch located in Walled Lake, MI.  KAPLAN was ultimately terminated from his position at Bank of America for violating bank procedures pertaining to opening unauthorized accounts for foreign-based individuals who were not present at the bank at the time of account opening.  The Bank of America internal investigation revealed that KAPLAN worked with YANUSHOK and OWENS-CRAWFORD to open more than a hundred accounts.  According to Bank of America records documenting their interview of KAPLAN, he admitted to forging documents on behalf of Bank of America customers brought to him by YANUSHOK, including account opening documents.  KAPLAN did this on behalf of YANUSHOK but claimed to not have received any financial compensation for doing so.  KAPLAN informed Bank of America investigators that he opened 1-2 accounts per week on behalf of YANUSHOK since the Summer of 2020[5].  KAPLAN stated that once he opened these accounts on behalf of YANUSHOK, he would e-mail YANUSHOK and let him know that the account was opened, provide the account information, including account passwords.  KAPLAN stated that he could not recall all the accounts that he opened in this manner and that the accounts "blurred together", according to the Bank of America report of interview.  KAPLAN stated that he assisted YANUSHOK, who he never met in person, open all the accounts to improve business productivity and revenue at that Bank of America branch location.  KAPLAN stated that he believes that YANUSHOK and OWENS-CRAWFORD work together.

53.    Investigator Salomon informed me that, as part of their investigation, Bank of America froze and closed numerous accounts opened by KAPLAN and several of his employees, including the Defendant Property.

---

[5] This investigation has revealed that that this activity likely preceded this time frame given by KAPLAN. M.S.'s accounts were opened in 2019, with assistance from YANUSHOK and OWENS-CRAWFORD.

<u>Defendant Property Account Opening and Account Activity</u>

54.     I submitted a request to Bank of America for account opening documents and activity associated with the Defendant Property Account.  According to Bank of America records, the Defendant Property Account is a checking account (xxxx xxxx 2092) that was opened at the Commerce Township Financial Center (Walled Lake, MI) on September 9, 2020. The account is subscribed to:

SPARK CAPITAL FUND LP[6]

27321 Red Leaf Ln

Southfield, MI 48076-7415

Employer Identification Number – 85-2736008

Account Signatories: Guy David SHANTSER & Idan HADAR

55.     The 27321 Red Leaf Lane address associated with this account is a residential address.  Law enforcement records checks of this address reveal no evidence of the existence of SPARK CAPITAL FUND LP, SHANTSER nor HADAR operating or residing at that residence. Furthermore, a web search for the company SPARK CAPITAL FUND LP reveals no website for this business.

56.     The Business Signature Card document associated with the opening of this account lists both SHANTSER and HADAR's names along with the titles "CEO" and "CFO" respectively along with signatures as seen below:

---

[6] This company is listed as SPARK CAPITAL FUND LP with Bank of America and SPARK CAPITAL FUND LLC with the State of Michigan Corporations Division.

Substitute Form W-9: Certification – Under penalties of perjury, I certify that:

1. The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (Defined in the W-9 instructions); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification Instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. (Please refer to the IRS instructions for Form W-9).

The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Printed Name | Title (if applicable) | Signature | Date |
| --- | --- | --- | --- |
| GUY DAVID SHANTSER | CEO | | 9/9/20 |
| IDAN HADAR | CFO | | 9/9/20 |
| | | | |
| | | | |
| | | | |

00-14-9297M 11-2018
NMII
© 2018 Bank of America, N.A. All Rights Reserved

Associate Name: Ursula Matheny
Financial Center: COMMERCE TWP.

Bank Number: 413
Date: 09/09/2020

57.     Based on the identity documents on file with Bank of America, SHANTSER is an Israeli citizen who provided a copy of an Israel passport (#34347307) and driver's license (#039266721).  HADAR also provided copies of his Israel passport (#23318865) and driver's license (#301044665).  According to Department of Homeland Security indices, there are no records of SHANTSER, nor HADER having entered the United States[7].  SHANTSER listed his occupation as a self-employed insurance agent and provided a Voice Over the Internet Provider (VOIP) phone number and G-mail account as his points of contact.  Despite having never entered the United States, SHANTSER listed his home address as a residence located in Lathrup Village, Michigan.  Records checks for this address reveal no affiliation with SHANTSER.  HADAR listed his address as a post office box in Southfield, MI that was also used to incorporate SPARK CAPITAL FUND LP with the State of Michigan.  The opening of this account without SHANTSER nor HADAR present, using U.S. addresses where they do not reside is a violation

---

[7] HADAR previously applied for and was granted a visa to enter the United States in 2017.  At that time, HADAR stated that he was attending school in Israel and working in the insurance field. However, there are no records of HADAR having used this visa to travel to the United States.

of Bank of America policies and done knowingly and intentionally to deceive Bank of America in violation of Title 18 USC 1344, bank fraud.

58.    The Business Signature Card shown above lists Ursula Matheny as the Bank of America employee who assisted with the opening of the Defendant Property Account.  As part of their internal investigation into OWENS-CRAWFORD, KAPLAN and others, Bank of American Investigator Salomon interviewed Matheny.  Investigator Salomon has provided me notes from this interview as well as a handwritten statement completed by Matheny.  Although there are no references to any specific accounts in these documents, Matheny stated that she opened accounts at the request of her manager, KAPLAN.  Matheny also stated that she is aware that Milton OWENS-CRAWFORD has been restricted from opening any other accounts at Bank of America because of fraudulent activity tied to many of his accounts.  Matheny stated that she did not know that OWENS-CRAWFORD was a "Register Agent" for the accounts that she opened on behalf of her manager, KAPLAN.

59.    I conducted an online search of the State of Michigan Corporations Division's publicly available records for SPARK CAPITAL FUND LLC.   These records reveal that this business was organized in Michigan on November 17, 2020, as a Domestic Limited Liability Company.  The "Resident Agent" listed for this company is OWENS-CRAWFORD of 24555 Florence St., Southfield, MI.  The mailing address is listed as PO Box 257, 22200 W Eleven Mile Rd., Southfield, MI 48037.  This address is a United States Post Office.  Conducting a wider search of the State of Michigan Corporation's Division website reveals that OWENS-CRAWFORD has registered more than 170 businesses in Michigan.  Many of these businesses are registered to the same Post Office address that OWENS-CRAWFORD used to register SPARK CAPITAL FUND LLC.

60.     The Defendant Property Account was opened with a $100 deposit from YANUSHOK's OMEGA GLOBAL account ending in 8414 on September 10, 2020.  As previously stated, this is the same account used to fund the opening of the Z.T., LLC account associated with M.S.

61.     After the initial deposit of $100 into the Defendant Property Account, the account registered no activity until December 1, 2020, when two deposits were made via wire transfers totaling over $405,000 from an entity in Israel named HALMAN ALDUBI PROVIDENT AND PENSION LTD.  These funds were withdrawn from the Defendant Property Account during this same month to other accounts maintained by SHANTSER at Bank of America.  The Defendant Property Account continued to receive large wire transfers crediting the account through May of 2022, when the account was frozen and closed by Bank of America for suspected fraud.  These deposits into the Defendant Property Account totaled over $17,890,000.  Most of these wire transfers came from two separate Israeli entities identified as SLICE GEMEL LTD and HALMAN-ABDUBI PROVIDENT AND PENSION[8].

62.     The outgoing wires associated with the Defendant Property Account are mostly sent to banks in Israel.  Unlike the credits to the Defendant Property Account, the debits from this account went to hundreds of different individuals and entities.  More than $53,000 was sent from the Defendant Property Account directly to the OMEGA GLOBAL account.  More than $5 million in wire transfers went to accounts held in the name of SHANTSER, located in Israel and the United States.  Debits from the Defendant Property Account also included numerous debit card transactions at retail locations in Israel, further confirming that SHANTSER and HADAR, and possibly other account users, are physically located outside of the United States.  These

---

[8] Also listed as HALMAN ALDUBI AND PENSION LTD and HALMAN ALDUB PROVIDENT.

international debits included significant Bank of America service fees.  For example, for the month of September of 2021, Bank of America charged over $3,500 in service fees for purchases and withdrawals made in Israel from the <u>Defendant Property Account</u>.

63.      Some of the debits associated with the <u>Defendant Property Account</u> contain references such as "FOR GOODS INVOICE" "ADVICE SERVICES" and "POP SERVICES"[9]. Some of these messages that are seemingly for some sort of business purpose pertain to debits from the <u>Defendant Property Account</u> to other accounts held by SHANTSER.  Others appear to describe the transfer of goods, such as a January 4, 2022, debit of $75,000 listed as "PAYMENT FOR INVOICE POP SERVICES" to a Chinese entity named "YIWU QUANXIN TRADING".

64.      Given the high volume of account activity (nearly $18 million in deposits) associated with the <u>Defendant Property Account</u>, coupled with the related account notes seemingly associated to business activity, I requested additional employee record and wage checks on SPARK CAPITAL FUND LP with the U.S. Department of Labor Office of Inspector General (DOL OIG).  On November 7, 2022, DOL OIG then requested a search of state of Michigan business records from the Michigan Unemployment Insurance Agency for any business records associated with SPARK CAPITAL FUND LP, based on the Tax Identification Number (85-2736008) provided to Bank of America.  This search produced no results in Michigan.

<u>District of Rhode Island Activity for the Defendant Property Account</u>

65.      In reviewing the outgoing wire transfers from the <u>Defendant Property Account</u>, I observed that most of the outgoing transfers were to foreign bank accounts or to other Bank of America accounts.  However, in December of 2021, the <u>Defendant Property Account</u> had three

---

[9] An online search for the phrase "POP SERVICES" produces several possible meanings, including point of purchase services.

debits, each for $50,000 to three separate Citizens Bank accounts.  I am aware that Citizens Bank is headquartered in Providence, within the District of Rhode Island.

66.    The first of these three wire transfers were sent on December 8, 2021, from the Defendant Property Account to a Citizens Bank account ending in 6493, held in the name of Guy David SHANTSER.  The other two transfers to Citizens accounts, occurred on December 23, 2021.  Both transfers were for $50,000 each and were credited to accounts ending in 1078, held in the name of SPARK CAPITAL FUND LP and 0926, held in the name of SUPERVISION LP.  Although little is known about the company SUPERVISION LP, I am aware that on November 24, 2021, YANUSHOK used the OMEGA GLOBAL account to send a $100 transfer to the account of SUPERVISION LP.  I am also aware that on August 26, 2021, OWENS-CRAWFORD registered a company in Michigan under the name of SUPERVISION INVESTMENTS LLC.

67.    According to Citizens Bank records, the account ending in 6493 was opened on November 10, 2021, at a branch located at 2014 Cottman Avenue in Philadelphia, PA.  The account opening documents show a signature for SHANTSER and list his address as P.O. Box 257, Southfield, MI 48037.  This is the same U.S. Postal Service mailbox used by OWENS-CRAWFORD to register numerous businesses in the state of Michigan.  On November 22, 2022, the account received a deposit of $100 from YANUSHOK's OMEGA GLOBAL Bank of America account.  The next transaction listed for SHANTSER's account 6493 was the $50,000 transfer that he sent to himself from the  Defendant Property Account.  On January 6, 2022, $50,000 was withdrawn from this account.  The account also shows foreign currency fees and commercial debit transactions posted from Israel in December of 2021 and January of 2022.  These transactions further confirm that SHANTSER is physically located outside of the United

States.  This account remains open as of October of 2022 with a balance of less than $500.

68.     According to Citizens Bank records, the account ending in 1078 was opened on December 10, 2021, at the same branch located in Philadelphia.  Although the account opening documents show a signature for SHANTSER, the account is held in the name of SPARK CAPITAL FUND LP and lists the same address of P.O. Box 257, Southfield, MI 48037.  On December 23, 2021, Citizens Bank records show the $50,000 incoming wire transfer from the Defendant Property Account.  On January 6, 2022, $50,000 was withdrawn from this account. The account shows no other transactions and has no remaining balance.

69.     On November 4, 2022, I spoke with Citizens Bank Senior Investigator Andrew Hunt, a member of the Citizens Bank Corporate Security & Resilience Group.  According to Senior Investigator Hunt, the accounts opened by SHANTSER were opened in violation of Citizens Bank policy, which, like Bank of America, require foreign nationals to open accounts in person at a branch location and provide certain acceptable forms of identification.  Senior Investigator Hunt confirmed that a Citizens Bank employee who was responsible for approving the opening of these two Citizens Bank accounts was terminated as a result of violating bank policies, including failure to follow proper KYC guidelines.

70.     Senior Investigator Hunt also informed me that all Citizens Bank wire transfers are processed by a facility located in the state of Rhode Island.  Based on this information, I believe that the three wire transfers initiated from the Defendant Property Account, totaling $150,000, were processed, in part, at a Citizens Bank facility located in the District of Rhode Island.  Furthermore, two of the three Citizens Bank accounts were opened by SHANTSER in violation of Citizens Bank policy and 18 U.S.C. § 1344, bank fraud.

71.    As previously stated herein, I have found no record of SHANTSER nor HADAR having legally entered the United States prior to the opening of the accounts at Bank of America or Citizens Bank.  Therefore, the <u>Defendant Property Account</u> and both of SHANTSER's Citizens Bank accounts (Accounts ending in 1078 and 6493) were opened in violation of banking procedures at both financial institutions.

72.    In summary, the Defendant Property was used by SHANTSER, YANUSHOK, OWENS-CRAWFORD, and others to facilitate the movement of more than $18 million dollars. The majority of these funds were moved into these accounts from Israel and returned to Israel in a circular pattern that appears to have been used to obfuscate the origin of the funds.  From my training and experience and from what I have learned working this investigation into M.S. and others, this pattern is part of a larger money laundering process, where tens of millions of dollars are consolidated and moved through a network of shell company accounts and ultimately destined for individuals and entities located outside of the United States.

73.    The KYC practices outlined herein codified in the USA PATRIOT Act and adopted by Bank of America, Citizens Bank and other U.S. financial institutions were designed to thwart this very type of activity conducted by SHANTSER, YANUSHOK, OWENS-CRAWFORD and others.  The fraudulent practices used to open these accounts, with the assistance of several since terminated bank employees, allowed the co-conspirators to bypass these compliance measures and utilize the Defendant Property in furtherance of their laundering practices.  In addition to finding no employee or wage data for SPARK CAPITAL FUND LP, as previously mentioned herein, the Michigan Unemployment Insurance Agency found no records for YANUSHOK or OMEGA GLOBAL INVESTMENTS LLC, based on a fraudulent Social Security Number and Tax Identification Numbers used to open their accounts with Bank of

America.  Based on the large volume of financial transfers associated with both Defendant Property and the OMEGA GLOBAL account, the business-related notes associated with many of these transfers and business incorporation documents provided to the state of Michigan and the banks, the lack of any employee or wage data for YANUSHOK and these businesses is highly unusual and another indicator of fraud.

74.     Based on the findings mentioned here, I believe that SHANTSER and HADAR used the Defendant Property to receive millions of dollars, sent to them by hundreds of individuals and entities, some who have been tied directly to reported fraud incidents. SHANTSER and HADAR appear to receive these funds mainly from accounts held outside of the United States and quickly deplete these funds through debits to other accounts mainly held outside of the United States, in a pattern that is indicative of money laundering.  SHANTSER and HADAR used the assistance of YANUSHOK and OWENS-CRAWFORD, who registered more than a hundred shell companies in Michigan used to deceive Bank of America into allowing this financial activity to take place at their institution.  YANUSHOK used the OMEGA GLOBAL account to fund the opening of numerous accounts, several of which were reported to have received more than a hundred thousand dollars derived from fraud.  All of these factors indicate that SHANTSER, HADAR, YANUSHOK and others likely conducted these patterns of behavior in a deliberate manner that was designed to circumvent anti-money laundering compliance measures put in place by Bank of America and Citizens Bank.  This belief is further substantiated by the fact that YANUSHOK was aware of these compliance measures and knowingly provided Bank of America with a fraudulent Social Security number at least one bank account in an attempt to defraud the bank.

75.     Bank of America records reveal that, at the time the <u>Defendant Property Account</u>

was closed on June 17, 2022, the account balance was 675,372.65. These funds were frozen by Bank of America and are maintained in an internal "Hold Harmless" account, according to Bank of America Internal Investigator Salomon. On December 21, 2022, I obtained a federal seizure warrant for the Defendant Property Account and served this warrant on Bank of America. On January 26, 2023, I received a check from Bank of America in the amount of $675,372.65 and secured this check into evidence for deposit per agency policy and procedures.

<u>CONCLUSION</u>

76.     Based upon my training and experience, coupled with the facts laid out here, I submit that probable cause exists to believe that the Defendant Property is property constituting or derived from proceeds traceable to bank fraud, wire fraud, conspiracy to commit wire fraud, and money laundering, and property traceable to such property, in violation of Title 18, United States Code, Sections 1343, 1344, 1349, 1956, and 1957. Therefore, the Defendant Property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), and 984, and Title 28, United States Code, Section 2461(c).

**Dated: 9/30/2024**

Sworn to under the pains and penalties of perjury,

BRENDAN J. CULLEN
Special Agent

Homeland Security Investigations (HSI)

25